**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2411
_____

HAMZA DELKI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-758-737)
Immigration Judge: Margaret R. Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2010

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed:  May 18, 2010)
_____

OPINION
_____

PER CURIAM

Hamza Delki has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of

Delki's requests for asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Hamza Delki is a citizen of Israel. He arrived in the United States in 2002 on a tourist visa, returned to Israel, then returned to the United States in 2004 on another tourist visa. He overstayed his visa and was placed in removal proceedings. He conceded removability, and in July 2007 he applied for asylum, withholding of removal, and CAT relief. On February 25, 2008, the IJ conducted a hearing on Delki's claim that he feared returning to Israel.

Delki testified at the hearing that he lived in Dirhanna, a village of Christians and Muslims in the northern part of Israel, near Lebanon. He was a mathematics teacher. He served for two or three months in the military, but because he had not finished his two-year service obligation, he was unable to obtain a teaching position in Israel. Delki conceded that he waited more than one year to apply for asylum after his 2004 arrival in the United States, explaining that he married a United States citizen in 2005. He noted that his marriage was considered to be unacceptable in his community in Israel; ultimately he and his wife divorced. Delki further explained that a war broke out between Israel and Lebanon in mid-2006. His hometown was near the area being shelled, and his family advised him that it was too dangerous for him to return, although his family did not relocate.

Delki stated that he was afraid to return to Israel because of the "talk nowadays about the war," his relationship with an American girlfriend, his new lifestyle in the United States, and better teaching opportunities in the United States. He also noted that the Israeli government would possibly jail him due to the circumstances of his military service delinquency; he had obtained a six-month deferment, traveled to the United States, and never returned. Delki testified that the Israeli military telephoned his family's home, and when informed that Delki was in the United States, the message was that Delki would be contacted upon his return to Israel. Delki stated that no problem arose, but he feared returning to Israel and being forced to serve the remainder of his military service time on the front lines of the fighting, because as an Arab living near the border of Lebanon, he had greater knowledge of the terrain. He also described his concerns about fanatic Muslim groups in his community that had labeled him a traitor for having served in the Israeli military, even though those groups had not done harm to him or his family thus far.

In his asylum application affidavit, Delki stated that his fear of returning to Israel was based on his marriage to a non-Muslim American citizen in 2005, which would cause him to be viewed as Americanized and a traitor to Muslim fundamentalists. When asked why his application statement did not mention his fear of returning to Israel because of the war, his military obligation, or his employment difficulties, Delki explained that he did not remember what he had written, and his application was

3

supposed to contain that information.

The IJ found that Delki did not testify credibly.  The IJ also determined that Delki had not met his burden of proof for asylum, withholding, or CAT relief, even assuming his testimony were credible.  Further, the IJ concluded that the asylum application was untimely.  The IJ denied relief and ordered removal to Israel if Delki did not depart voluntarily.  On April 14, 2008, the BIA dismissed Delki's appeal.  The BIA found no clear error in the IJ's adverse credibility finding and accordingly found no error in the denial of asylum and withholding relief.  The BIA noted that it did not reach the question of whether Delki would have established eligibility for relief assuming that his testimony was credible, and further noted that it need not address the issue of whether the asylum application was untimely.  In addition, the BIA concluded that Delki had not met his burden of proof on his CAT claim.  This petition for review followed.[1]

To the extent that the BIA deferred to the IJ's findings, we will review the IJ's decision as supplemented by the BIA.  See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).  We review these findings, including any credibility determinations, under a substantial evidence standard.  See Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005).  The Court must uphold the credibility determination of the BIA unless "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

---

[1]We have jurisdiction over the timely petition for review pursuant to 8 U.S.C. § 1252(a).

4

We do not overturn a credibility finding simply because we would make a different finding. See Gabuniya v. Attorney General, 463 F.3d 316, 321 (3d Cir. 2006).

Substantial evidence supports the adverse credibility determination.[2] The BIA relied on the IJ's determination, citing the material difference between Delki's testimony and his asylum application statement regarding his fear of returning to Israel. Indeed, as noted above, Delki's testimony focused on fears related to his military service obligation and related employment difficulties, while his asylum application did not relate those fears. Delki provided little explanation for the more expansive explanation of his fears in his testimony, and the inconsistency concerns the heart of his claim for relief. Delki argues that his failure to file an asylum application that is not as complete as his testimony does not require the conclusion that his testimony was not credible, and he cites Smolnaikova v. Gonzales, 422 F.3d 1037, 1045 (9th Cir. 2005), in support. However, this Court has recognized that material omissions in the asylum statement can support an adverse credibility determination. See, e.g., Xie, 359 F.3d at 242-43 (involving omission of the alien's wife's sterilization in the application when that fact was advanced at the

---

[2] Delki's asylum application was filed after May 11, 2005, and thus the provisions of the REAL ID Act apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). The REAL ID Act provides that an adverse credibility determination can be based on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). As will be noted, the factors relied upon by the IJ in this case concerned matters that are central to Delki's claim.

5

hearing as the very basis for the claim).[3]

We now address Delki's CAT claim. Delki argues that he has shown that members of the Israeli military would torture him by forcing him to complete his military service and to commit human rights violations upon his people. He also suggests that he has met the standard for CAT relief by showing that the government of Israel demonstrates willful blindness to the torture of its citizens. However, we note that it is not enough for public officials to be "willfully blind" to torturous acts. To constitute torture, the officials must "have the goal or purpose of inflicting severe pain or suffering." Pierre v. Att'y Gen., 528 F.3d 180, 190 (3d Cir. 2008) (en banc). The record here does not compel the conclusion that Delki "more likely than not" would be tortured if he returned to Israel. See Tarrawally v. Ashcroft, 338 F.3d 180, 187 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2).

We will deny the petition for review.

---

[3] Delki argues that the IJ's determination that the asylum application was untimely was erroneous because he established extraordinary circumstances to excuse his untimely filing. We do not reach this issue because substantial evidence supports the agency's adverse credibility finding.